IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CONNIE P.,**[1]

                          Plaintiff,                      Civ. No. 3:22-cv-00799-MK

       v.                                                      **OPINION AND ORDER**

**COMMISSIONER SOCIAL SECURITY ADMINISTRATION**,

                         Defendant.

___

**KASUBHAI, Magistrate Judge:**

      Plaintiff Connie P. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is reversed and remanded for the

___

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

calculation and payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff's claims for SSI and DIB were denied initially and upon reconsideration. Tr. 57, 93. She requested an administrative hearing, an appeared before an administrative law judge (ALJ) on December 14, 2021. Tr. 32-58. In a written decision dated December 17, 2021, the ALJ denied Plaintiff's claim for benefits. Tr. 7-31. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1980, Plaintiff was 40 years old when she applied for benefits on November 7, 2020. Tr. 10.[2] She alleged disability as of May 1, 2018, due to combined impairments of autonomic nervous system disorders, anxiety, depression, attention deficit/hyperactivity disorder, chronic bronchitis, gastroesophageal reflux disease, and obesity. Tr. 13.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149,

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 11, provided by the Commissioner.

Page 2 – OPINION AND ORDER

1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity after her alleged onset date of May 1, 2018, including the periods of January to April 2019 and December 2019 to March 2020. Tr. 18. At step two, the ALJ determined that Plaintiff had the severe impairments of disorders of the autonomic nervous system, anxiety, depression, and attention deficit/hyperactivity disorder (ADHD). Tr. 13. The ALJ also found that Plaintiff had the non-severe impairments of chronic bronchitis, GERD, and obesity, but that there was nothing to show these conditions caused significant vocational limitations. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14.

Prior to step four, the ALJ determined that, despite her impairments, Plaintiff retained the RFC to perform light work with the following limitations: she can lift and/or carry 20 pounds

occasionally and 10 pounds frequently; she can stand and/or walk for a total of about six hours and sit for a total of about six hours in an eight-hour workday; she can occasionally climb ladders, ropes, and scaffolds; and she must avoid even moderate exposure to extreme heat. She is also limited to understanding and carrying out simple instructions consistent with reasoning level one or two and can have only occasional contact with the general public, coworkers, and supervisors. Tr. 17-18.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work as a cashier, salesclerk, or patient transport. Tr. 24. At step five, the ALJ found that based on Plaintiff's age, education, work experience, and residual functional capacity, she could perform jobs that existed in significant numbers in the national economy, including small products assembler, marking clerk, and mail clerk. Tr. 25-26. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 26.

In this appeal, Plaintiff argues that the ALJ erred by (I) formulating an internally inconsistent RFC by limiting her to simple instructions yet allowing for jobs with a reasoning level of 2; and (II) failing to consider Plaintiff's Vocational Rehabilitation Eligibility evaluation; and (III) failing to properly include her social limitations in the RFC.

**I.      Internally Inconsistent RFC**

Plaintiff first argues that the ALJ erred because he included a limitation to performing only simple instructions, yet also indicated that Plaintiff could perform jobs with a reasoning level of 2. Plaintiff argues that these provisions are inconsistent because a limitation to simple instructions rules out a claimant's ability to perform jobs with a reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles Appendix C: Components of The Definition*

*Trailer*, 1991 WL 688702. Plaintiff also asserts that her limitations exclude work with a reasoning level of 2 because "'[s]imple instructions' is the language utilized by the [DOT] for Reasoning Level One." Pl. Br., at 5 (ECF 12). The Commissioner argues that the ability to perform "detailed but uninvolved" instructions is consistent with Plaintiff's limitation to simple instructions.

While there is no binding precedent on the issue of whether a claimant limited to simple instructions can follow "detailed but uninvolved" instructions as required for jobs with a reasoning level of 2, the Ninth Circuit has indicated in an unpublished decision that restricting a claimant to the performance of simple and routine tasks is consistent with jobs that require level 2 reasoning. *Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. Nov. 19, 2008) (finding that "someone able to perform simple repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); *see also Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (where a claimant was limited to simple, routine, and repetitive work, the court found that the claimant's limitations were in conflict with the demands of Level 3 reasoning and that "Level 2 Reasoning ... seems at least as consistent with [claimant's] limitation as Level 3 Reasoning, if not more so").

In *Patton v. Astrue*, No. 6:11-CV-06423-ST, 2013 WL 705909, at *1 (D. Or. Feb 25, 2013), this court previously provided a compelling analysis of the issue. The court explained:

> In the definition, the word "detailed" is modified with the words "but uninvolved[.]" The dictionary meaning of "involved" is "complicated[.]" Webster's New Int'l Dictionary 1191 (3d ed. 2002). Furthermore, the definition of "complicated" is "not simple[.]" *Id.* at 465. Thus, "uninvolved" means "simple[.]" The modifier "but uninvolved" must be considered when interpreting the definition of Level [2] reasoning. *See e.g.*, *Abrew v. Astrue*, 303 Fed. Appx. 567, 569–70 (9th Cir. 2008) (emphasized the phrase "but uninvolved" to affirm the ALJ's finding that the plaintiff could perform jobs with Level 2 reasoning, despite a limitation to simple tasks). Considering the entire phrase, "detailed but uninvolved," [this Court] find[s] that while the instructions may be detailed, they may also be simple. A task that includes "detailed, but uninvolved" instructions may consist of a number of steps, none of which are complex. [Without the express limitation to "one or two" steps or instructions,

Page 6 – OPINION AND ORDER

   there is no limitation to Level 1.] Therefore, a [plaintiff] who is limited to "short, simple instructions" is capable of performing a job requiring Level [2] reasoning.

Following the reasoning in *Patton*, this court in *Cortez v. Comm'r*, No. 6:17-CV-00194-HZ, 2018 WL 1173423 (D. Or. Feb. 25, 2013) also concluded that "a plaintiff who is limited to 'short, simple instructions' is capable of performing a job requiring Level 2 reasoning." *Id.* at *1. As Plaintiff has not provided argument to rebut the analysis provided in *Patton*, the court rejects Plaintiff's argument that the ALJ's RFC is internally inconsistent.

## II. Vocational Rehabilitation Eligibility Evaluation

Plaintiff next argues that the ALJ failed to consider of evaluate Plaintiff's Vocational Rehabilitation ("VR") Eligibility evaluation. On May 31, 2019, Plaintiff underwent a VR evaluation, and was classified as "Most Significantly Disabled – Priority 1." Tr. 2101-02. The VR evaluation identified Plaintiff's impediments to work as diminished interpersonal skills and inability to interact in a socially acceptable manner at work or with others, causing job loss. Tr. 2102. The VR report also indicated that Plaintiff was unable to carry out work activities involving physical, emotional, and psychological stamina. *Id.* The Commissioner concedes that the ALJ failed to consider the VR evaluation but argues that she was not required to do so, citing 20 C.F.R. §§ 404.1520b(c)(1)-(3), 416.920b(c)(1)-(3). Those regulations state that decisions by other "governmental agencies" are "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled." *Id.*

The purpose of a VR evaluation by the Oregon Vocational Rehabilitation division is to determine a claimant's eligibility for services. See, e.g., *Parker v. Colvin*, 2014 WL 3672923 (D. Or. 2014). Thus, a VR determination that a claimant is "Most Significantly Disabled" does not indicate that the claimant is disabled for the purposes of the ALJ's disability determination. Further, the record shows that eight months following Plaintiff's initial eligibility evaluation,

Page 7 – OPINION AND ORDER

Plaintiff's VR counselor determined that Plaintiff no longer needed services and was performing well at her job. A claimant's limitations must persist for a period of 12 months or more to be disabling. See *Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002). Because the VR evaluation was not probative as to the issue of Plaintiff's disability, the ALJ's failure to consider or credit the VR evaluation was not harmful error.

### III.    Social Limitations Not Included in the RFC

Plaintiff argue, finally, that the ALJ failed to properly incorporate all of her credited limitations into the RFC. Specifically, Plaintiff notes that the ALJ's RFC failed to capture the full extent of Plaintiff's social limitations as assessed by the state agency physicians. Here, state agency physicians Julian Lev, PhD, and Paul Cherry, PhD, reviewed Plaintiff's record and opined that she was capable of only "superficial" social interactions. Tr. 72, 112. The ALJ credited these opinions, noting that both physicians found that Plaintiff "has moderate limitations in interacting with others and can interact appropriately … on a "superficial level." Tr. 15, 22-23. Nevertheless, the ALJ formulated an RFC limiting Plaintiff to "occasional" interaction with the public. Plaintiff argues that this translation of her limitations from the qualitative "superficial" to the quantitative modifier "occasional" improperly inflated her social functioning abilities, resulting in harmful error.

The Commissioner argues that the ALJ's interpretation of Drs. Lev and Cherry was not error, citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1106-07 (9th Cir. 2017) for the proposition that there is "no obvious inconsistency" between a "qualitative" limitation that a claimant could "relate to others on a superficial basis" and the ALJ's "quantitative" limitation that the claimant could have "occasional" interaction with coworkers. *Shaibi* is distinguishable from this case. In *Shaibi*, the claimant's physician had opined that he was moderately limited in interactions with the general public, but not with coworkers. *Id*. at 1105. The ALJ's RFC limited Mr. Shaibi to "simple routine

tasks in a non-public setting, with occasional interaction with coworkers." The Ninth Circuit determined that this tailored limitation – restricting Mr. Shaibi's public interactions but allowing for some interactions with coworkers – was consistent with medical evidence that the claimant was moderately limited with respect to interactions with the general public, but not with respect to coworker interactions. *Id.*

The claimant's medical records also indicated that Mr. Shaibi's social functioning issues were only mildly limiting, and that he could "relate to others" on a "superficial work basis." *Id.* In making its determination that the ALJ did not err in his evaluation of the medical evidence, the Ninth Circuit considered multiple medical sources, including the evidence that Mr. Shaibi was only mildly limited in his social functioning, multiple physicians' opinions, a "Summary Conclusions" worksheet submitted by Mr. Shaibi's physician supplementing that physician's comments. In sum, the Ninth Circuit indicated that its review and approval of the ALJ's RFC was contingent on a nuanced, contextualized assessment of Mr. Shaibi's social abilities with respect to different kinds of social interaction – with the public, and with coworkers. Thus, while *Shaibi* has been cited for the proposition that an ALJ "could" properly interpret a moderate limitation in social functioning to allow for occasional interactions with coworkers, *Jacobson v. Berryhill*, 2018 WL 2146444 (C.D. Cal. 2018) at *5, it is silent on whether such an interpretation will be proper in all evidentiary contexts. See also *Solano v. Saul*, 2021 WL 792735 (E.D. Cal. 2021) at *5-6 (moderate social limitations, absent any restriction to superficial interactions, are consistent with a limitation to occasional public contact and occasional teamwork).

Here, by contrast with the facts in *Shaibi*, there was no analogous nuance in the medical opinion evidence regarding Plaintiff's social abilities. Drs. Cherry and Lev determined that Plaintiff had moderate limitations in her ability to interact with others, including co-workers, the

Page 9 – OPINION AND ORDER

public, and supervisors, and concluded that she could therefore tolerate only superficial social interactions. While the Administration does not define "superficial," Social Security Ruling 83-10 defines "occasionally" as "occurring from very little up to one-third of the time," 1983 WL 31251, at *5, and numerous courts in other districts have found a meaningful distinction between "occasional" and "superficial" interactions in the context of reviewing an ALJ's decision for reversible error. See, e.g., *Greene v. Saul*, 2020 WL 4593331, at *4 (N.D. Ind. 2020) (ALJ erred because he made no attempt to explain his limitation of claimant to "occasional interaction" when medical providers limited claimant to "superficial, casual interactions with others"; *Sanders v. Astrue*, 2012 WL 1657922, at *12 (D. Minn. 2012) (distinguishing "occasional" interaction and "superficial" interaction because even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions); *Eveland v. Berryhill*, 2017 WL 3600387, at *4 (N.D. Ind. 2017) (finding that the ALJ erred when the ALJ limited claimant to "occasional" contact with coworkers and supervisors when medical expert opined that claimant could engage in "superficial" contact on an "ongoing basis"). In this case, because the ALJ credited the opinions of the state agency physicians that Plaintiff was limited to superficial interactions, she was required to incorporate these limitations into Plaintiff's RFC. The ALJ's failure to include Plaintiff's moderate limitations on social interactions into the RFC by limiting her to "occasional" social interactions with the public was error.

## REMEDY

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d

1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the first condition is met because the ALJ improperly failed to incorporate Plaintiff's social limitations into the RFC and therefore effectively rejected the opinions of Drs. Lev and Cherry. *Dominguez*, 808 F.3d at 407.

The second condition is also met. The Ninth Circuit has held that remanding for further proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, there is no suggestion by the parties that the record is not fully

developed, and the court has found no outstanding conflicts or ambiguities after a careful reading of the record.

As to the third prong of the credit-as-true analysis, the court finds that the ALJ would be required to find Plaintiff disabled on remand. Here, the ALJ determined that Plaintiff was not disabled based on a finding that Plaintiff could perform jobs requiring a reasoning level of two. Tr. 26, 55. This finding was based on Vocational Expert (VE) testimony at the administrative hearing. At the hearing, the ALJ asked the VE whether a claimant with Plaintiff's RFC would be able to perform any work and asked the VE to provide a few examples. The VE answered in the affirmative, and listed the representative occupations of small products assembler, marking clerk, and mail clerk – each requiring a reasoning level of 2. Tr. 55.

Consistent with the ALJ's flawed RFC, jobs with a reasoning level of two require the worker to accept detailed written or oral instructions, which exceed Plaintiff's credited limitation to superficial social interactions. Social Security Ruling 83-10 defines "occasional" interactions as taking up to one-third of an eight-hour workday. 1983 WL 31251, at *5. This level of interaction is clearly inconsistent with Dr. Lev and Dr. Cherry's limitations on social interactions. Because the VE did not identify any jobs that Plaintiff could perform given her credible social limitations, the ALJ would be required to find Plaintiff disabled when the erroneously rejected limitations are credited as true. See Tr. 55.

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted). The Commissioner argues that Plaintiff's improvement with

medication, unremarkable clinical findings, and daily activities "all indicate that she can work." Def. Br. at 10 (ECF 13). However, the Commissioner identifies no specific inconsistencies between Plaintiff's testimony and the medical evidence, nor does the Commissioner point to any evidence that the ALJ overlooked. See *Dominguez*, 808 F.3d at 407.

Here, the ALJ credited competent medical evidence that Plaintiff was socially limited in ways that significantly limit her ability to perform substantive gainful activity. As discussed above, the VE did not identify any jobs that Plaintiff could perform that did not require more than superficial social interactions. Considering the record as a whole, the Court therefore concludes that there is no reason for serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021. Accordingly, the Court exercises its discretion and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is REVERSED and REMANDED for the immediate payment of benefits, under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 27th day of April 2023.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge
